[No. 906.]

## L. RICHARDSON, RESPONDENT, v. S. F. HOOLE, APPELLANT.

PLEADINGS—WAIVER OF OBJECTIONS TO FORM.—Objections to the form of a complaint are waived by a failure to demur.

IDEM—SUFFICIENCY OF COMPLAINT.—A complaint alleging that plaintiff is a sub-contractor for the erection of the walls of a state prison, and responsible for the labor thereon; that defendant (the architect for the state) had, pursuant to an agreement with plaintiff and the principal contractor, received from the state, for the use and benefit of plaintiff, the sum of fifteen thousand dollars, and had only paid out on plaintiff's account ten thousand dollars, and refused to pay over or account for the remaining five thousand dollars; states facts sufficient to constitute a cause of action.

CONFLICT OF EVIDENCE.—Testimony reviewed and held sufficient to sustain the verdict.

ERROR—MUST BE PREJUDICIAL.—An error in refusing to admit testimony is cured by the admission of the same testimony at a subsequent stage of the trial.

IMMATERIAL TESTIMONY—WHEN ADMISSIBLE.—Where the defendant was permitted to show that he had overdrawn his bank account for the purpose of showing that he had loaned his credit to plaintiff: *Held*, although the testimony was immaterial, that plaintiff had the right to show by the same witness that the overdrafts were on account of defendant's stock speculations.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts appear in the opinion.

*Thomas E. Haydon,* for Appellant.

*Boardman & Varian,* for Respondent.

By the Court, BEATTY, J.:

The substance of the complaint in this action is that the plaintiff was a sub-contractor under William Thompson for the erection of the walls of the state prison at Reno; that, as such contractor, he was responsible to laborers and others for all debts incurred in carrying on the work, and was entitled to receive payments of money from the state as the work progressed; that the defendant received from the state, through Thompson, on account of the contract, and for the use and benefit of plaintiff, sums amounting in the aggregate to fifteen thousand dollars, which he promised and agreed to and with plaintiff and Thompson to pay over and account for as follows: First, to pay all claims of laborers and others against or on account of the work, and then to pay the balance to plaintiff; that he has paid out, on account of such claims, not exceeding ten thousand dollars, and refuses, though requested so to do, to pay over or account for the remaining five thousand dollars.

The answer of the defendant admits the receipt of ten thousand seven hundred and forty-nine dollars and sixty-six cents from the state on account of the contract price of the prison walls, but avers that the money was received in

accordance with an agreement between plaintiff and defendant to the following effect: Plaintiff, being anxious to procure from Thompson an assignment of his contract with the state, and being a stranger without means or credit sufficient to enable him to carry on the work, agreed that if defendant would negotiate the purchase of the contract, and assist him with his means and credit in completing it, he would pay defendant two thousand five hundred dollars during the progress and on the completion of the building. The defendant, in consideration of this promise, procured the assignment of the contract from Thompson, aided with his means and credit in completing it, and kept all plaintiff's accounts with laborers and material-men. He also, for the protection of himself and Thompson against claims of laborers and material men, agreed to and did receive and disburse the money coming from the state. He avers that of the amount so received he paid out on account of labor and materials all but one thousand forty-nine dollars and eighty-seven cents, leaving the plaintiff still indebted to him in the sum of one thousand four hundred and fifty dollars and thirteen cents, the balance of the contract price of his services, for which he prays judgment. There is also a *quantum meruit* count for the same services in which they are alleged to be reasonably worth two thousand five hundred dollars.

Upon these pleadings the case was tried, and a verdict and judgment rendered in favor of the plaintiff for seven hundred and fifty dollars. Defendant moved for a new trial, which was denied, and he now appeals from the judgment and order denying his motion for a new trial.

The first point made in support of the appeal is that the complaint did not state a cause of action. To sustain this proposition it is argued that there was no consideration for the promise of defendant to disburse the money received by him and keep the necessary accounts and vouchers. It may be conceded that there was no consideration for that promise, and that the defendant was not bound to perform it; but, having received plaintiff's money, he is bound to account for it in some way (unless he is entitled to keep it,

which, we think, would scarcely be claimed), and it makes no difference whether plaintiff's cause of action was legal or equitable, nor what would have been the proper form of action at law before the code. If any objection could ever have been taken to the form of the complaint, it was waived by the failure to demur. The only question here is, did the complaint, favorably construed, state any cause of action? and there can be no doubt that it did.

It is next claimed that a new trial should have been granted upon the ground that the verdict was contrary to all the evidence in the case.

We think the evidence amply sustains the verdict. The defendant admitted in his answer the receipt of upwards of one thousand dollars more than he had paid out on plaintiff's account, and the burden was upon him to show not only that he had made the payments which he claimed to have made, but also that he was entitled to receive anything from the plaintiff on account of his alleged services. In attempting to do this he developed the following somewhat peculiar state of facts:

Thompson had commenced work under his contract with the state, and had given a bond with sureties in the sum of fifty thousand dollars, conditioned for the faithful completion of the work according to the specifications, and for the delivery of the same to the state free and clear of all claims or liens for labor or materials.

The defendant was the architect employed by the state to look after its interests. As such architect it was his duty, among other things, to see that the work was properly done; that good materials were used, and that all claims for labor and materials were paid as the work progressed, and before the payment by the state of the full contract price.

This being the state of affairs, the plaintiff was desirous to procure an assignment of the contract, but as the state held Thompson and his sureties responsible for its completion, he (Thompson) made it a condition of the assignment that the money to be paid by the state should pass through the hands of the defendant, to be applied in the first place to the discharge of all claims against or on account of the

building, and the balance remaining to be paid to plaintiff. The defendant, being consulted, assented to this arrangement, and a written contract of assignment was accordingly entered into between Thompson and the plaintiff. The defendant was not a party to this contract, but it was provided therein that he should receive and disburse the money as above specified, and Thompson and plaintiff both testify that he agreed with them without anything being said about any compensation for his services, that he would so receive and disburse it. They both testify that the arrangement was made solely for the advantage and protection of Thompson and his sureties, and that there was no other contract or agreement with the defendant whatever. The defendant, on the other hand, testified to the express contract set up in his answer; that he negotiated the assignment of the contract to plaintiff; that he superintended the work for plaintiff; that he kept his accounts; that he purchased on his own credit the materials used in the construction of the prison walls, and that he had paid out all the money received from the state except seven hundred and seventy-six dollars. This last item of his testimony is opposed to the admission of his answer that he had retained upwards of a thousand dollars on account of his services, but it was admitted without objection, and he will be allowed the advantage of it. He also offered the testimony of an expert that services such as he claimed to have rendered were reasonably worth two thousand five hundred dollars, and there was no opposing testimony on that point.

Upon this it is contended that he was entitled to a judgment for the difference between two thousand five hundred dollars, the reasonable value of his services according to the uncontradicted testimony of McKay, and seven hundred and seventy-six dollars, the amount retained by him out of the money received from the state. This, however, is a *non sequitur,* and the vice of the argument consists in the assumption that the rendition of the services for the plaintiff, as well as their value, was undisputed. Nothing can be further from the truth than the assumption. The plaintiff denied the rendition of any services except those

specified in the complaint, and he and Thompson both tes-
tified that they, so far as they were not due to the state
from the defendant as architect, were rendered for the ben-
efit and advantage of Thompson exclusively.   Taking the
plaintiff's version of the contract and defendant's statement
of the account, the verdict should have been for seven
hundred and seventy-six dollars instead of seven hundred
and fifty dollars.   The plaintiff owed defendant nothing for
his services.   On the contrary, it appears that the plaintiff
was seriously inconvenienced, and his business deranged
by the retention of his money in defendant's hands.

Several rulings of the court made during the progress of
the trial are assigned as errors: 1. Thompson testified for
plaintiff in regard to the agreement between himself and
plaintiff and defendant.   On cross-examination he was asked
what compensation defendant was to have for the services
to be rendered under the agreement between him and
plaintiff.   This question was objected to, and the objection
sustained by the court, defendant excepting.   The ground
of the objection, we presume, was that the question re-
ferred to the contract set up in the answer, and not to
the one set out in the complaint.   At any rate, it was
upon that ground that the court sustained the objec-
tion.   Counsel, it is true, said to the court that
they meant only to inquire about the contract as to
which the witness had testified in chief; but they did
not alter the form of the question so as to make its
meaning clear and unambiguous, as they might have easily
done.   This alone might be sufficient to sustain the action
of the court, but admitting that the ruling was technically
erroneous, it is very clearly shown, not only that the error
was harmless, but that it was cured by Thompson's answer
to the same question at a subsequent stage of the trial.   In
the first place, it was harmless, because the defendant, in
his own testimony, does not pretend that Thompson ever
heard the plaintiff promise him any compensation; and in
the second place, Thompson testified in rebuttal that plaint-
iff did not promise anything to his knowledge.

But counsel contends that the question was not only

material, but that it was allowable on cross-examination for the purpose of probing "the motives, prejudices, inclinations," etc., of the witness. We do not see that the question could have served any such purpose, and besides, the defendant had the advantage of Thompson's answer for every purpose it could possibly serve.

2. The defendant, on cross-examination of one of plaintiff's witnesses—a banker—called out the fact that during the construction of the prison walls the defendant's bank account was frequently overdrawn. On the re-direct examination of this witness plaintiff was permitted to show that defendant's overdrafts were on account of stock speculations. Defendant moved to strike out all the testimony relating to his stock transactions, and the motion was overruled.

If, as the appellant contends, the fact of his overdrafts had a tendency to prove that he had loaned his credit to the plaintiff, then certainly it was competent for the plaintiff to show that the overdrafts were on account of defendant's own peculiar business. It seems to us that the fact that defendant's bank account was overdrawn had very little relevancy to any issue in the case; but the defendant, having called it out for the purpose of showing that he had loaned his credit to plaintiff, could not object to the explanation, and his motion to strike out the one and leave the other was properly overruled.

3. The court refused to allow counsel to cross-examine plaintiff as to how he was enabled to get the assignment from Thompson. The ruling was correct. The plaintiff was testifying in the opening of his own case, and the testimony sought to be elicited related solely to the affirmative defense set up in the answer. The time to have asked the question was when the plaintiff testified in rebuttal, and in effect it was asked and answered.

These are all the assignments of error. They are without merit, and the judgment is affirmed.